**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 1:21-cr-00043-CJN** |
| **v.** | : | |
| | : | |
| **RASHA ABUAL-RAGHEB,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum. Pursuant to a plea agreement, the defendant has pled guilty to one count of parading, demonstrating or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), for her conduct in connection with the January 6, 2021 attack on the U.S. Capitol. Her offense of conviction carries a maximum penalty of six months of incarceration. Based upon her consistent violent rhetoric before, on and after January 6, 2021 – including her social media post that "Civil War is coming and I will be happy to be a part of it"--the government requests that this Court sentence the defendant to a 30-day period of incarceration.

**I.      Introduction**

The violent attack on the Capitol Building interrupted the certification of the 2020 Electoral College vote count, injured more than one hundred law enforcement officers, directly resulted in the deaths of four individuals, and caused more than one million dollars in property damage. Although a new president was inaugurated two weeks later, the attack marked the first instance in over 150 years in which violence marred our peaceful transfer of political power following an election.

While the defendant did not herself engage in violence or directly cause property damage, she entered the Capitol building that day as part of a mob.  And she did so through a doorway that had been violently breached by other rioters less than 30 minutes earlier.  Although her time inside the building was brief—approximately 2 and a 1/2  minutes—while inside she posed proudly for a photograph, which she posted on social media later that night.

Most significantly, the defendant used social media to spread false information about the 2020 Presidential election and repeatedly endorsed violence.  In one particular post she urged others to bring firearms with them when they went to D.C. on January 6.  And after the riot she defiantly announced on social media that she was ready to "burn" America.

When finally arrested, on  January 19, 2021, she insisted she had done nothing wrong.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

The Capitol is secured 24 hours a day by the U.S. Capitol Police (USCP).  Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP officers.  Only authorized people with appropriate identification are allowed access inside the Capitol.  On January 6, 2021, the exterior plaza of the Capitol was also closed to members of the public, as a joint session of the United States Congress convened inside.  During the session, elected members of the United States House of Representatives and the United States Senate were meeting to certify the  vote count of the Electoral College of the  2020 Presidential Election.  The joint session began at approximately 1:00 p.m.  By approximately 1:30 p.m., the House and  Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and  presiding, first in the joint session, and then in the Senate chamber.  As the  proceedings continued in both the House and  the Senate, and with

Vice President Mike Pence still presiding over the Senate, a large crowd gathered outside the Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol, USCP were present and attempting to keep the crowd away from the building and the proceedings underway inside.

As the certification proceedings were still underway, the exterior doors and windows of the Capitol were locked or otherwise secured. USCP officers attempted to maintain order and keep the crowd from entering the Capitol. However, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and assaulting USCP members, as others in the crowd encouraged and assisted them.

Shortly thereafter, at approximately 2:20 p.m. members of the House of Representatives and Senate, including the President of the Senate, Vice President Mike Pence, were instructed to --and did--evacuate the chambers. At approximately 2:43 p.m., a USCP officer fatally shot one of the rioters, after she disobeyed the officer's verbal commands to stay back, and climbed through a window in the Speaker's Lobby near the House chamber.

As a result of the riot, the Congressional proceedings were suspended from approximately 2:20 p.m. until shortly after 8:00 p.m.

During national news coverage of these events, video recorded by persons who were present on the scene emerged that depicted numerous violations of local and federal law, including assaults on police officers, destruction and theft of government property, and scores of individuals inside Capitol without authority to be there.

*The Defendant's Social Media Posts Leading Up to January 6*

From shortly after Election Day, November 3, 2020, and continuing up to January 6, 2021, the defendant posted false information and sent angry messages about the election on her Facebook page, including messages promoting violence.

3

On November 5, 2020, she posted:

> I'm a women [sic] with 3 kids!  And I made it to every Rally!!  No
> way NJ count all the votes!  My vote still not Coumt [sic]![1]
> Every Rally In NJ were [sic] getting thousands!!!!  Rise up!  You
> want to keep your greed [sic] your gun your family!  Then stand
> up!  I won't stop !  **They have to kill me!!!**  To remove me!  Share
> it!  It's not time for brainwashed people oh we don't like trump!
> Trump supporters already planning on taking the streets!  we all
> need to be one [sic, on] hand!!

(emphasis added).

On December 21, 2020, the defendant posted this message:

> Best president ever, we will not standby, we will not give up, as
> Democrats scared from the riots, will guess what we are 74
> million American that they won't shut up we will take the street
> **1776 again**

(emphasis added).

On December 23, 2020, the defendant began posting about her plans to attend a rally in

D.C. on January 6, 2021.  On December 28, 2020, referring to the upcoming "rally," she posted:

> Yeah **bring your own guns** if you will stay there by yourself
> there's no one with you from us, do you think BLM coming with
> no weapons?  I'm  bringing with me some toys also[.]

(emphasis added).

On January 3, 2021, she exchanged multiple Facebook direct messages about her

preparations for the rally.  At 5:46 p.m. she messaged:

> I'm  bringing paper [sic, pepper] spray, knife and a small toy for
> protection..  and the boys They always watch over us especially

---

[1]The defendant is a resident of New Jersey, but was born and raised in the Middle East.  She is not a native English speaker.

me because when I'm in the middle I don't care I just go and start
attacking BLM [Black Lives Matter] if they say anything[.]

In a post a few minutes later she revealed her "toy" was a one-million-volt "self-defense" stun
gun.

The defendant also posted about her intention to go the Capitol on January 6.

Specifically, on January 4, she posted that there were "3 events" taking place in D.C. on January
5 - 6, and attached this screenshot:



Historic week in Washington
DC (Jan 5-6):

Event 1: Jan 5: 1pm, Freedom
Plaza (1301 Pennsylvania
Ave NW)

Event 2: Jan 6: 9am, The
Ellipse - President's Park
(South of The White House).
More info:
MarchToSaveAmerica.com

Event 3: Jan 6: 1pm, Capitol
Building. More info:
WildProtest.com

See you there! ~Team, Stop
The Steal

At the time she posted the screen-shot the website "WildProtest.com" included this statement: "We the People must take to the US Capitol lawn and steps and tell Congress #DoNotCertify on #JAN6!  Congress cannot certify this fraudulent Electoral College."

The defendant then posted this ominous warning late in the night on January 4:  "It's trump or Civil war[--]1776 coming."

*The Defendant's Conduct on January 6*

The defendant traveled by train from New Jersey to D.C. the evening of January 5, and spent the night at a D.C. hotel.  She would later tell law enforcement agents that she went to a rally on the ellipse the following morning.

The defendant appears in numerous videos from several sources--police body-worn camera (BWC), USCP closed-circuit video (CCV) camera, and social media—in connection with the attack on the Capitol.  An interior USCP CCV camera pointed toward a west doorway on the Senate side of the Capitol recorded her entering the building at 3:13 p.m.  That doorway had been first violently breached at 2 p.m. by other rioters.  It was then re-secured by USCP members several minutes later before being breached again at 2:49 p.m.

At 3:13 p.m., the defendant walked through the doorway along with multiple other rioters, as shown in the still image below.



A few moments thereafter she posed for a triumphant photograph.



She then left through the same doorway about two minutes later.  Other video

sources show that she remained on the Capitol grounds for at least another 75 minutes,

wandering back and forth among other rioters and occasionally verbally engaging with law enforcement members.  These video sources include BWC recordings which unlike USCP CCV recordings include an audio component.  At one point she can be seen angrily gesturing while yelling toward the Capitol building, and presumably to the Members of Congress she believes are inside, "F*ck you, f*ck you, we will hurt you!" An image from that particular recording appears below.



*The Defendant's Social Media Posts Over the Next Several Days*

The defendant's Facebook posts later in the night on January 6, show her intense anger at law enforcement members and lack of remorse:

"BIM [sic, Black Lives Matter] burned the country down, they never got Treat us like us with full force";

"I was inside[,] we didn't do anything wrong."; and

"I will never recovered [sic] from what I saw."[2]

In one post that night she issued this stark warning:  "'I guess now we need to burn the country[;] they never did this to BLM."

On January 7, she proudly posted on her Facebook page the image of herself in the Capitol Building:

---

[2]This particular post followed earlier posts that reference the police-involved fatal shooting of one of the rioters, which the defendant, in some of those posts, claims to have seen.



With the image, she sent a boastful message: "I was the only from my group to enter the capitol[;] Carlos [and] the rest run away and left me alone[;] I got teargas and pepper spray but I made history . . . ."

Her mood darkened again two days later, however, and she doubled down on her earlier threat:

> We've been saying this for long time, I guess and I believe after being in DC and a witness it [sic] the people are more angry[;] **Civil War is coming and I will be happy to be a part of it**

(emphasis added).

*The Defendant's Arrest*

On January 17, 2021, United States Magistrate Judge Robin M. Meriweather signed a complaint against the defendant, charging her with misdemeanor offenses related to her conduct in and around the Capitol on January 6.  The Court also issued a warrant for the defendant's arrest, which was executed on January 19, 2021, at her Fairfield, New Jersey home.

Following her arrest, the defendant waived her <u>Miranda</u> rights and gave a voluntary statement to FBI agents.  She also cooperated during the hours-long interview and even allowed the agents to examine her smart telephone for evidence of relating  the events of January 6.  But she expressed no remorse for her conduct during the riot.

*The Charges and Plea Agreement*

The government thereafter charged the defendant in a four-count Information with entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); engaging in disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); violently entering and engaging in disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5102(e)(2)(D); and parading, demonstrating or picketing in a Capitol building, in violation of 40 U.S.C. § 5102(e)(2)(G).  On August 23, 2021, she pled guilty to Count Four of the Information.  In exchange the government has agreed to dismiss the remaining charges at sentencing.

### III.    Statutory Penalties

As noted by the plea agreement and the presentence report, the defendant faces up to six months of imprisonment and a fine of up to $5000.[3]  She must also pay restitution, as provided

---

[3]Because the defendant has pled guilty only to a petty offense, a term of supervised release is not authorized.  *See* 18 U.S.C. § 3583(b)(3).

for in the plea agreement, in the amount of $500.  *See United States v. Anderson*, 545 F.3d 1072,

1078-79 (D.C. Cir. 2008); 18 U.S.C. § 3663(a)(3).

**IV.      Sentencing Factors Under 18 U.S.C. § 3553(a)**

Among the factors set forth in 18 U.S.C. § 3553(a), the Court must consider in

formulating a sentence are:

> (1)    the nature and circumstances of the offense and the history
>        and characteristics of the defendant;
>
> (2)    the need for the sentence imposed—
>
>    (A)    to reflect the seriousness of the offense, to promote
>           respect for the law, and to provide just punishment for
>           the offense;
>
>    (B)    to afford adequate deterrence to criminal conduct;
>
>    (C)    to protect the public from further crimes of the
>           defendant; and
>
>    (D)    to provide the defendant with needed educational or
>           vocational training, medical care, or other correctional
>           treatment in the most effective manner;
>
> (3)    the kinds of sentences available;
>
>        .       .       .
>
> (6)    the need to avoid unwarranted sentence disparities among
>        defendants with similar records who have been found guilty
>        of similar conduct; and
>
> (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The Court is also required "to impose a sentence sufficient,

but not greater than necessary, to comply with the purposes set forth in paragraph

(2)" above.  *Id.*

Application of these factors supports a sentence of 30 days of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the Capitol, on January 6, 2021 is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms and was only the second time in our history when the Capitol was literally occupied by hostile actors.  But this time it was by Americans, not by foreign invaders as in 1814.  The attack defies comparison to other events.

While each person convicted in connection with the attack should be sentenced based on his or her individual conduct, every January 6 rioter who penetrated the Capitol would have passed numerous barriers bearing signs prohibiting further access.  In addition, even if an individual attacker did not personally attack law enforcement officers or damage property, each would have very likely observed other attackers fighting with law enforcement and likely would have smelled chemical irritants in the air.

Each defendant's conduct should be assessed in light of several factors to determine his or her relative culpability.  Additionally, while looking at each rioter's individual conduct, we must assess the conduct on a spectrum.  This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include:  (1) whether, when and how the Capitol attacker entered the Capitol building; (2) whether the attacker engaged in or incited violence; (3) whether the attacker engaged or incited any acts of property destruction; (4) the attacker's reaction to acts of violence or destruction; (5) whether during or after the riot, the attacker destroyed evidence; (6) for those that entered the Capitol Building the length of time they remained inside and the sensitivity of the specific locations they accessed; (7) the attacker's statements in person or on social media regarding the attack; (8) whether the attacker cooperated with law enforcement; and (9) whether the attacker showed remorse or contrition.  While these

factors are not exhaustive nor dispositive, they help to place each individual Capitol attacker on a spectrum with respect to the appropriate sentence.

**B.  The History and Characteristics of the Defendant**

This defendant has had no prior encounters, as an accused, with the criminal justice system.  If her statements to the Probation Office are accurate, she has a difficult life, suffering abuse both as a child and an adult.  She is also raising two minor children as the sole custodial parent.  Admittedly, her history and characteristics thus militate in favor of a non-custodial sentence.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the Capitol building was an attack on the rule of law.  As FBI Director Christopher Wray has stated:  "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[4]  As with the nature and circumstances of the offense, this factor supports a sentence that includes confinement.  *See United States v. Joshua Bustle and Jessica Bustle*, 1:21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation.  I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

**D.  The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals:  general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by a

---

[4]Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf

particular defendant.  *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010); 18 U.S.C. §
3553(a)(2)(B), (C).

   *General Deterrence*

   The demands of general deterrence weigh in favor of confinement.  The violence at the
Capitol on January 6 was intended to interfere, and did interfere, with one of the most important
democratic processes we have:  the peaceful transfer of power to a newly elected President.  As
noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 1:21-cr-188-RDM:

>      [D]emocracy requires the cooperation of the governed.  When a
> mob is prepared to attack the Capitol to prevent our elected
> officials from both parties from performing their constitutional and
> statutory duty, democracy is in trouble.  The damage that [the
> defendant] and others caused that day goes way beyond the
> several-hour delay in the certification.  It is a damage that will
> persist in this country for decades.

Tr. at 69-70.

   Indeed, the attack on the Capitol means "that it will be harder today than it was [nine]
months ago for the United States and our diplomats to convince other nations to pursue
democracy.  It means that it will be harder for all of us to convince our children and our
grandchildren that democracy stands as the immutable foundation of this nation."  *Id.* at 70; *see
also United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges
on this court have recognized, democracy requires the cooperation of the citizenry.  Protesting in
the Capitol, in a manner that delays the certification of the election, throws our entire system of
government into disarray, and it undermines the stability of our society.  Future would-be rioters
must be deterred.") (statement of Judge Nichols at sentencing).

   The gravity of these offenses demands deterrence.  The attack on the Capitol was not a
protest.  It is important to convey to those who might contemplate a similar attack in the future—

especially those who intend to improperly influence the democratic process—that their actions will have substantial adverse consequences. There is possibly no more important factor that this Court must consider.

*Specific Deterrence*

Just a few days before the riot this defendant repeatedly warned her Facebook followers that if her preferred candidate was not declared the winner of the 2020 presidential election it would be "civil war" or "1776," clearly indicating a willingness to engage in violence. She also stated her intention to bring weapons to the January 6 "rally" and urged others to bring firearms. At the Capitol she yelled threats that "we will hurt you," and then after the riot, she posted of the need to "burn" the country. These statements demonstrate that specific deterrence is an appropriate consideration in this case.

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but in light of their participation in the January 6 riot. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes and probationary sentence, without any requirement of confinement, should not be the default. Indeed, the government invites this Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going

to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also*
*United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said
something to the effect . . . 'I don't want to create the impression that probation is the automatic
outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something
similar.") (statement of Judge Friedman).

While the number of sentenced defendants is low, the sentencing judges and the
government have drawn meaningful distinctions between offenders, including those convicted
only of misdemeanors. Those who engaged in felonious conduct are generally more dangerous,
and thus treated more severely in terms of their punishment. Those who trespassed, but engaged
in aggravating conduct, merit serious consideration of institutional incarceration. While those
who trespassed, but engaged in less serious aggravating conduct, deserve a sentence more in line
with minor incarceration or home confinement. After a review of the applicable section 3553(a)
factors, the government submits that this defendant's conduct in connection with the riot, which
must include consideration of her social media postings before and after January 6, merits a
sentence of brief incarceration.

## Conclusion

The government requests that this Court sentence the defendant to a 30-day period of
institutional incarceration. The Court should also order the defendant to pay $500 in restitution,
as required by the plea agreement.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

by:     /s/*Michael C. Liebman*
         Michael C. Liebman
         D.C. Bar No. 479562
         Assistant United States Attorney
         555 4th Street, N.W., room 9106
         Washington, D.C.  20530
         202-252-7243
         202-353-9415 (fax)
         michael.liebman@usdoj.gov