## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:21-cr-00043 (CJN) |
| | ) | |
| RASHA ABUAL-RAGHEB | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

On January 5, 2021, Ms. Abual-Ragheb boarded a train travelling from New Jersey to Washington, D.C.  She was not "in the mood to go" but knew her friends would come "drag" her out of the house.  (FB post, 01-03-2021, 23:43:14 UTC).  She had attended two previous rallies in the District of Columbia in support of President Trump, one on November 14, 2020, and the second one on December 12, 2020.  For the mother of three, whose life had been plagued with very difficult times, her participation in those previous rallies included dancing, fun, camaraderie and a sense and feeling of duty, purpose and belonging.  She decided to go "even though [she] lost all [her] passion" because it was "better than staying home." (FB Post, 01-03-2021, 23:52:10 and 23:55:33 UTC).

During the December rally she dressed in a ruby red Christmas dress and Christmas hat. (Attachment A).  For the January 6 rally and protest

she decided to wear a red, white and blue tutu.  This outfit would be easy to dance in.  She brought a small fanny pack which she wore around her waist and had on other Americana clothing in red, white, and blue, plus winter boots, after all it was the middle of winter.  (Attachment B).  With that outfit on, she made her way down from the hotel where she stayed the night before, to hear President Trump speak on January 6.  She was elated to hear him speak in person.  After he finished speaking, she moved with the crowd of people around her in the direction of the Capital.  The Trump campaign had sent her a list of events taking place in D.C. on January 5-6, which she posted on Facebook (see Govt. Br. at 5).  She believed all the events had been granted permits.[1]

As she made her way down Pennsylvania Avenue on January 6, and up to the Capital she did not see people pushing past barricades, nor did she see any of the violence perpetrated by other persons in the crowd against police.  She was not near those persons nor in a position to see what they were doing  At 2:07 p.m. she was near the street behind the capital.  (Attachment C).  At 2:39 p.m. she was near the Capital, (Attachment D); and by 2:53 p.m. she was by the north west side of the Capital.  (Attachment E).  At 3:13 p.m. she along with a stream of others nearby, entered the Capital.  Video footage show her enter the Capital around 3:13.  She only walked into the area immediately by the entrance.

---

[1] She was unfamiliar with the site and group and she did not go to the WildProtest.com website as the prosecution did.

She walked no further, not down a hallway, nor up a flight of stairs. She did not hang out in the building but rather gave a random passerby her cellular phone to take her picture. (Attachment F). Once the picture was taken, she reached her arm back to reclaim her phone and then immediately turned to begin her walk out the door. Because of the stream of persons entering the building, it took a while to walk out the door, even though she was very near the exit. In all, she was inside less than 2 minutes. That was the extent of her entry into the building.

Ms. Abual-Ragheb chanted outside the building at various times, she walked around, talked with others, and also noticed someone she believed to be Antifa arguing with a journalist. She yelled out to police to alert them to the argument but police remained unresponsive. Finally, another protestor grabbed the man who was aggressively antagonist towards the journalist and walked him out of the area.

The prosecution acknowledges that Ms. Abual-Ragheb did nothing on January 6 while at the Capital that merits the 30 day sentence they request. Instead they rely on Facebook posts posted by Ms. Abual-Ragheb either leading up or after January 6, to recommend this unwarranted sentence.

I.   **Procedural Background**

Ms. Abual-Ragheb was arrested at her home on January 19, 2021, in New Jersey. Her children were home with her. Agents stayed with her children, got them

donuts and cooked them mac and cheese.  She remains grateful to the law
enforcement who were so kind and gentle with her children.  She spoke with law
enforcement over a four hour period, answering all their questions and even
reviewing her cellular phone with them.  To say she cooperated with law enforcement
during that interview, is an understatement.  She was remorseful during the
interview.  She was released the same day she was arrested.  Her first appearance
before this Court was on January 25, 2021.  All the hearings in this matter before our
Court have been virtual.

On August 23, 2021, Mr. Abual-Ragheb entered a guilty plea before the Court
to Count 4, of the four count indictment in this case, charging her parading,
demonstrating or picketing in a Capital Building, in violation of 18 U.S.C.
§5104(e)(2)(G).  Sentencing is currently scheduled on November 23, 2021.

## II.    Statutory Framework/Guidelines

The offense of parading, demonstrating or picketing in a Capital Building in
violation of 18 U.S.C. §5104(e)(2)(G), is a Class B Misdemeanor offense carrying a
possible sentence of not more than 6 months and a fine of not more than $5,000.  As
the offense is a Class B Misdemeanor the guidelines are inapplicable.   Ms. Abual-
Ragheb has no prior convictions.   A sentence of probation is the appropriate
sentence.

## III.    Facebook Posts

The government cites to various Facebook posts written by Ms. Abual-Ragheb to
support their draconian recommendation of 30 days jail time.  Some of these posts,

Ms. Abual-Ragheb admits were stupid, others were not true, some were

exaggerations, others were not clearly expressed due to English being her second

language and others were taken out of context.  Firstly, Ms. Abual-Ragheb never

intended to be part of a "civil war" when she came to the Capital on January 6.  She

showed up wearing a tutu to dance, during her protest.  It's clear that she never

intended to participate in a civil war at the Capital because she did not show up

wearing a tactical vest, gas mask, ballistic helmet, body armor, radio equipment,

military style backpack, shield, or pitchfork or any of the other battle type

armament.  Her appearance and what she wore clearly shows her real intent.

She genuinely believed that the vote she cast was not counted.  She voted and

then did a voter search which indicated inactive status.  (See Attachment G).   So

when she wrote "My vote still not Count" it was in reference to the search results.

She also believed the stories about peoples kids being taken by elected Democrat

officials and so as a mother she inarticulately wrote that someone would have to kill

her before taking her children away. (November 5, 2020, post).

She acknowledges that it was stupid of her to claim that she was bringing "toys"

with her and to write that others should bring their guns.[2]  She was concerned that

supporters of Black Lives Matter would be violent and wrote the post in the context

of protecting herself from those supporters.  Ms. Abual-Ragheb never brought any

weapons with her to D.C.  When law enforcement came to her residence to arrest

---

[2] It was in a private message between Abual-Ragheb and another individual that she claimed to be bringing pepper spray and toys.

her they also searched her home.  No weapons were found because she never possessed any.

   She does recall chanting while at the Capital but does not recall saying expletives. She followed the chants of what others around her were chanting.  Further, Ms. Abual-Ragheb never intended to burn anything down.  In a very inartful way, again English not being her first language, she tried to express the disparity in treatment over the police response against the protestors on January 6, while other people, such as Black Lives Matter supporters who engaged in burning down businesses and other buildings were allowed to do so without repercussions.  When she was inside the Capital for her less than 2 minute time period she did not see anyone trying to burn or destroy the building and yet she saw reports of police hitting protestors on January 6.  Ms. Abual-Ragheb was merely trying to express how some people could get away with burning buildings while some January 6, protestors were struck by police.

   Ms. Abual-Ragheb also claimed in a Facebook post that she was present inside the building when Ashli Babbitt was shot.  The shooting occurred at approximately 2:44 p.m. Yet Mr. Abual-Ragheb did not enter the Capital until around 3:13 p.m. and she was no where near Ms. Babbitt at the time of the shooting.  This post is very telling, as it shows that Ms. Abual-Ragheb does exaggerate when she writes posts, whether she writes about that shooting or about a civil war, and that one cannot take her posts seriously.  Two days after January 6, when she wrote about a civil war coming, she repeated a phrase she had heard others say.  She saw that people at the

Capital were angry but just as earlier posts were exaggerations so to was the statement that she would be happy to be a part of it.

   Ms. Abual-Ragheb should not receive jail time for her inartful and exaggerated posts.  She never acted upon these posts and she regrets having made the posts. Her conduct at the Capital on January 6, shows she has more "bark than bite."  As the saying goes actions speak louder than words. Ms. Abual-Ragheb's actions show that she came to the Capital on January 6, she rallied, she protested, she danced, she entered the Capital for less than two minutes, she got a photograph then turned and exited the inside of the building, she chanted with others outside and then she left.

### IV. Additional Sentencing Factors Pursuant to 18 U.S.C. §3553

   Ms. Abual-Ragheb moves this court to sentence her to probation.  Such sentence amounts to a "reasonable" sentence in this case.  A sentence of jail time would be overly punitive, unreasonable, and is not warranted in this case.  In conjunction and consideration of the other §3553(a) sentencing factors the court must take into account, such a sentence is reasonable and just.

### (a) Reflect seriousness of the offense and promote respect for the law, 18 U.S.C. §3553(a)(2)(A)

   Ms. Abual-Ragheb's actions at the Capital support a sentence of probation. As explained above, she came to the Capital dressed in a tutu not in battle gear. She never expected things to get out of hand like they did.  She anticipated another rally of dancing and camaraderie.  She came to

exercise her First Amendment right to protest the election results but never with the intention to actually change the outcome of the election.

### (b) Ms. Abual-Ragheb's Personal Characteristics

Ms. Abual-Ragheb was born and raised in Jordan. Although her family was wealthy she grew up under a strict father who arranged her marriage. She moved to the United States to live with her husband. She had her first child with her husband but endured physical and emotion abuse and she ended the marriage. Ms. Abual-Ragheb believes due to her ending the marriage her family considers her to have brought shame to the family and she is under threat of death if she were return to Jordan.[3]

She fared no better in her next relationship. Although two children resulted from this second relationship, she now has sole custody of the children due to the physical and mental abuse she suffered during this relationship as well.[4]

Ms. Abual-Ragheb suffers from mental health issues due to all the difficulties growing up as well as what she endured during the relationships with the father of her children. She has consistently been attending treatment and receiving medications since her arrest in this case.

### (c) Family Circumstances Warrants the Sentence Requested

---

[3] The presentence report provides additional details of the difficulties in her life.
[4] Due to the troubles she encountered with the fathers of her children, she is part of the address confidentiality program for domestic violence victims. Her arrest unfortunately has brought her into the lime light and she has concerns for her and her children's safety.

Ms. Abual-Ragheb has three children, two of whom are school-aged and need her mental, emotional, and financial support.  As the fathers of the children cannot be in the children's lives, there is no one else to take care of the children.

Compelling family circumstances can provide a basis for a variance under the guidelines as well as a downward departure.  See *United States v. Schroeder*, 536 F.3d. 746, 755-56 (7th Cir. 2008) ("Although the concept of departures has been rendered obsolete in post-*Booker* sentencing the district court may apply those departure guidelines by way of analogy in analyzing the section 3553(a) factors.") (internal citations omitted); see also *United States v. King*, 201 F.Supp.3d 167 (D.D.C. 2016) (finding the defendant did not meet §5H1.6 requirements but nevertheless decided that a variance was appropriate for a variety of reasons including caretaking and family responsibilities).  Here the guidelines do not apply but compelling family circumstances exist in support of a non-prison sentence.

**(d)** **To Sentence Abual-Ragheb to a Term of Prison would Result in an Unwarranted Disparity**

Sentences of probation with conditions have been consistently imposed on persons who plead to the same misdemeanor offense as did Ms. Abual-Ragheb. Thus to sentence her to jail time would cause an unwarranted disparity.  Although in their pleading, the government was quick to quote Judges' who stated that probation may not always be appropriate, those very Judges imposed sentences of probation.  Chief Judge Howell and Judges Lamberth, Boasberg, McFadden, Hogan,

Friedman, and this Court have all imposed sentences of probation with conditions.[5] There is no basis to deviate from such sentence here.  Even considering the government's proposed list of factors at page 13 of their pleading, favors a probation sentence consistent with that imposed on others.


**(e) <u>Deterrence</u>**

A sentence of probation is more than sufficient to address any deterrence concerns.  Ms. Abual-Ragheb has already suffered consequences as a result of her actions on January 6.  Her two children were ostracized and bullied at school, causing her to have to pull them out of school to home school them.  Fortunately, due to the kindness of a stranger who became aware of her situation, she received monies to pay for the home schooling program.  Likewise Ms. Abual-Ragheb found it difficult to locate employment and when she did, the employer took advantage of her requiring her to seek law enforcement assistance to receive her pay.  She currently is unemployed.

More significantly her mental and physical health has suffered.  She believes she may have suffered a mild stroke due to the stress.  She found herself grinding her teeth at night causing her to break a tooth.  The anxiety caused various sleeping and digestive problems as well.  Her life has been filled with angst since her arrest.

**V.     <u>Conclusion</u>**

---

[5] See cases:  1:21-cr-227; 1-21-cr-238; 1:21-cr-324; 1:21-cr-97; 1:21-cr-41; 1:21-cr-204; 1:21-cr-391; 1:21-cr-164; 1:21-cr-68; 1:21-cr-204; 1:21-cr-355.

Ms. Abual-Ragheb urges this Honorable Court sentence her to probation as has been done in almost all the other cases of defendants pleading to a misdemeanor offense.  A sentence other than that is unwarranted and would cause an undue hardship on her family.

Respectfully submitted,

OFFICES OF ELITA C. AMATO

/s/

Elita C. Amato, Esq.
2111 Wilson Blvd.
8th Floor
Arlington, VA  22201
Tele:  703-522-5900

**CERTIFICATE OF SERVICE**

I hereby certified that this Memorandum was filed using the ECF pacer system, thereby providing notice of service to government counsel Michael C. Liebman, Esq., on this 2nd day of November 2021.

/s/

_____
Elita C. Amato